UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NICOLA CHERICHEL,

Plaintiff,

v.

ERGO SOLUTIONS, LLC,

Defendant.

Civil Action No. 12-1452 (JDB)

## MEMORANDUM OPINION

Nicola Cherichel alleges severe and pervasive sexual harassment—constituting a hostile work environment—at her former workplace, Ergo Solutions. The vast majority of these allegations, however, are time-barred by the relevant statute of limitations. In fact, only one allegation occurred within the appropriate time-frame. But because that allegation occurred well after Cherichel was fired and left Ergo, it cannot contribute to a claim of hostile work environment: there was no "work environment" for Cherichel at Ergo at that time. As a result, the Court must grant Ergo's motion to dismiss.

## BACKGROUND

The following facts are taken from the complaint and assumed to be true. See Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc., 52 F.3d 373, 375 (D.C. Cir. 1995). Cherichel began working at Ergo Solutions in late 2006. Am. Compl. [ECF No. 34] ¶ 6. Soon after she joined the company, CEO George Brownlee began making persistent and personal advances toward her. Id. ¶ 7–10. As time went on, Brownlee's actions progressed to inappropriate touching and even sexual assault. Id. ¶ 13, 20. Cherichel was fired in September 2010. Id. ¶ 28. But this

behavior continued until that October, when—in the wake of another sexual advance—Cherichel filed a formal complaint with Ergo's Human Resources Office. Id. ¶ 27.

In February and March 2011—after Cherichel was no longer employed at Ergo—Brownlee continued to initiate contact with her. Id. ¶ 31. He promised employment (at Ergo or elsewhere) were Cherichel to meet with him. Id. She refused. Id.

Cherichel filed a complaint with the Equal Employment Opportunity Commission in June 2011. Id. ¶ 32. That September, Brownlee attempted to dissuade her from pursuing her complaint. Id. ¶ 33. In particular, he "threatened to use his contacts to get Ms. Cherichel" and "told her that he knew people at the Washington Field Office of the EEOC and would have the complaint dismissed." Id.

Cherichel filed suit in this Court in August 2012. When Ergo failed to respond, Cherichel sought a default judgment. See Mot. for Default J. [ECF No. 12]. The Court's review of the complaint, however, "reveal[ed] . . . obvious and significant defects." May 20, 2014 Order [ECF No. 28] at 1. In response, Cherichel filed an amended complaint in July 2014, mooting the motion for default judgment. See July 18, 2014 Order [ECF No. 33]. The amended complaint raised hostile work environment and sexual harassment claims under both 42 U.S.C. § 1983 and the D.C. Human Rights Act. Cherichel abandoned the § 1983 claim at a status conference that same day. Ergo has now moved to dismiss what remains of the amended complaint, citing the DCHRA's statute of limitations, and has also requested sanctions.

## **LEGAL STANDARD**

"A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint." Nat'l R.R. Passenger Corp. v. Lexington Ins. Co., 357 F. Supp. 2d 287, 292 (D.D.C. 2005). At

this stage, the Court "construe[s] the complaint liberally in [the plaintiff's] favor, taking all the facts alleged as true, and giving [the plaintiff] the benefit of all reasonable inferences from those facts." Maljack, 52 F.3d at 375.

## ANALYSIS

**I.   MOTION TO DISMISS**

The DCHRA permits suit only "within one year of the unlawful discriminatory act, or the discovery thereof." D.C. Code § 2-1403.16(a). Because the initial complaint was filed in August 2012, only acts occurring after August 2011 are fair game. And the amended complaint provides exactly one allegation that occurs within the relevant time-frame: the phone call Brownlee placed to Cherichel in September 2011. Cherichel hopes that this single allegation can serve as an anchor, tying in the earlier allegations of discrimination. This theory, however, cannot match the claims she has pleaded under the DCHRA.

True, the DCHRA "must be generously construed," with a scope exceeding that of Title VII. Lively v. Flexible Packaging Ass'n, 830 A.2d 874, 887 (D.C. 2003) (en banc) (internal quotation marks omitted). But the D.C. courts have "often looked to cases construing Title VII" to interpret their own statute, id. (internal quotation marks omitted), including reliance on National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002). In particular, the D.C. Court of Appeals has noted that Morgan "distinguished a discrete act of discrimination from a hostile work environment claim." Lively, 830 A.2d at 889. "A discrete . . . discriminatory act occurred on the day that it happened. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id. (quoting Morgan, 536 U.S. at 110, 122) (alteration, citation, and internal quotation marks omitted). Hence, "'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" Id. (quoting Morgan, 536 U.S. at 122).

Hostile work environment, however, is a different animal: it "cannot be said to occur on any particular day." Id. (quoting Morgan, 536 U.S. at 123). Thus, "if 'an act contributing to the hostile work environment claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability.'" Id. at 890 (quoting Morgan, 536 at 117) (alteration omitted). "[B]ut at least one act contributing to the claim must occur within that period in order for the filing to be timely." Id. at 892 (internal quotation marks omitted).

This framework presents problems for Cherichel along both axes. Consider first her discrimination claim—to the extent the complaint may be construed as raising one. As Lively teaches, one timely filed allegation does nothing to render justiciable those "discrete discriminatory acts" occurring earlier. And standing alone, that final allegation here (occurring within the filing period) does not refer to employment discrimination based on sex, but merely to odious and harassing behavior. Any discrimination claims must therefore be dismissed.

Hostile work environment may present a different story: if this one timely allegation "contribut[es]" to the claim, then everything earlier is timely as well under the hostile work environment label. But such a "contribution" is precisely the link missing here. The September 2011 phone call occurred one year after Cherichel was fired from, and hence left, Ergo Solutions. Even a "generous construction" of the DCHRA, Lively, 830 A.2d at 887 (internal quotation marks omitted), still requires that a hostile work environment occur at—it should go without saying—a work environment. To accept Cherichel's reading of the statute would imply that any unfortunate chance encounter with a former employer—even years later and far removed from the workplace—could reopen a hostile work environment claim long after the employment relationship ended. This cannot be the meaning of the DCHRA.

4

Cherichel acknowledges that the September 2011 allegations occurred when she was only a former, not current, employee. She argues, however, that such a distinction "does not defeat her claim . . . because [it] is the type of claim that Title VII was directed to address." Pl.'s Opp'n [ECF No. 37] at 5. As her only support for this proposition, Cherichel points to Robinson v. Shell Oil Co., 519 U.S. 337 (1997).

Robinson does indeed hold that Title VII "include[s] former employees within the scope of 'employees' protected by" the statute. Id. at 345. But there are two problems with analogizing the cases. First, Cherichel ignores the textual difference between Title VII and the DCHRA. The federal statute defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). In reading that definition to include former, as well as present, employees, the Supreme Court noted that the statutory definition "lacks any temporal qualifier." Robinson, 519 U.S. at 342. But the definition of "employee" provided by the DCHRA focuses more clearly on present and future tense, to the exclusion of past: "an individual employed by or seeking employment from an employer." D.C. Code § 2-1401.02(9).

Second, the point here is not that Cherichel, as a former Ergo employee, is ineligible to sue under the DCHRA (or Title VII, for that matter). Rather, it is simply that actions long after she has left employment at Ergo do not constitute a hostile work environment so as to make timely her otherwise plainly untimely claim.

Third, and most important, Robinson focuses on the context of retaliation claims—which are not part of Cherichel's amended complaint. See 519 U.S. at 345 ("Insofar as § 704(a) expressly protects employees from retaliation . . . it is far more consistent to include former employees within the scope of 'employees' protected by § 704(a)."). The difference matters, both logically and textually. Since retaliation often takes the form of firing, "it would be destructive of th[e] purpose

5

of the antiretaliation provision for an employer to be able to retaliate with impunity against an entire class of acts under Title VII." Id. at 346. No such concern accompanies hostile work environment claims. And the DCHRA seems to recognize this distinction in its text: where the anti-discrimination provisions protect current employees and employment-seekers, the anti-retaliation provision is broader: "It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person" regarding the exercise of any rights under the statute. D.C. Code § 2-1402.61(a) (emphasis added). Again, Cherichel does not raise a retaliation claim in her amended complaint, and nothing here suggests that actions taken against former employees long after they have left the workplace create a hostile work environment for them.

Thus, in this context—hostile work environment—and under this statute—the DCHRA—Cherichel has failed to put forth any timely allegations that might allow her amended complaint to proceed. As a result, the Court must grant Ergo's motion to dismiss.

## II.     MOTION FOR SANCTIONS

A court may impose sanctions on an attorney or party who violates Federal Rule of Civil Procedure 11(b). That rule requires—as relevant here—that "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Furthermore, the pleading or motion must not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The rule is not, however, "intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed. R. Civ. P. 11 Advisory Comm. Note (1983 Amend.).

"The test for sanctions under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim. The

Court must also take into consideration that Rule 11 sanctions are a harsh punishment, and what effect, if any, the alleged violations may have had on judicial proceedings." Hickey v. Scott, 738 F. Supp. 2d 55, 72 (D.D.C. 2010) (alteration, citation, and internal quotation marks omitted).

Ergo contends that sanctions are warranted here, because the Court had previously warned Cherichel about the tenuous validity of her claims under the statute of limitations. As explained above, the Court agrees that Cherichel has not presented a viable legal theory: the only factual allegation occurring within the statute of limitations happened after Cherichel was no longer an Ergo employee. Attempting to shoehorn the rationale of retaliation claims into the framework of hostile work environment is not a successful strategy. But the Court is reluctant to conclude that it is so frivolous a legal theory as to merit sanctions—particularly given that the DCHRA is considered to be broader in scope than Title VII, and given the predilection towards permitting cases under the DCHRA to proceed. See Lively, 830 A.2d at 887.

The Court is also mindful that neither side in this case has, to date, behaved with either the most laudable strategy or the cleanest of hands. Indeed, Ergo's own motion for sanctions was originally included as part of its motion to dismiss, in violation of Rule 11(c)(2). And when it finally filed a separate motion, it focused largely on counsel's behavior in other cases—rather than providing an argument about the merits or demerits of the legal claim at issue here. Hence, the Court will deny Ergo's motion for sanctions.

## CONCLUSION

For the reasons set forth above, Ergo's motion to dismiss is granted, and its motion for sanctions is denied. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  March 30, 2015